**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL MULGREW, *et al.*,

                                              *Plaintiffs*,

         v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                                              *Defendants*.

---

NEW YORKERS AGAINST
CONGESTION PRICING TAX, *et al.*,

                                              *Plaintiffs*,

         v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                                              *Defendants*.

Case No. 1:24-cv-01644-LJL
Case No. 1:24-cv-00367-LJL

---

**DEFENDANTS THE METROPOLITAN TRANSPORTATION AUTHORITY, THE**
**NEW YORK CITY DEPARTMENT OF TRANSPORTATION, THE TRAFFIC**
**MOBILITY REVIEW BOARD, AND THE TRIBOROUGH BRIDGE AND TUNNEL**
**AUTHORITY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 1

    I.    Plaintiffs' Challenges to the Final EA and FONSI Are Time-Barred............................ 1

        A. Plaintiffs' Arguments in *Mulgrew* Are Meritless........................................ 2

        B. Plaintiffs' Arguments in *New Yorkers* Are Likewise Meritless ................... 9

    II.   Plaintiffs' Arguments Against Dismissing the SAPA Claim Fall Short........................ 10

        A. The SAPA Claim Is Not Ripe ..................................................................... 10

        B. The SAPA Claim Fails as a Matter of Law .................................................. 12

    III.  Plaintiffs in *New Yorkers* Fail to Respond to Defendants' Arguments........................ 15

CONCLUSION...................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................. 2

*Boundless Energy NE, LLC v. Pub. Serv. Comm'n of State of N.Y.*,
   63 N.Y.S.3d 182 (N.Y. Sup. Ct. 2017)...................................................... 13

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
   915 F. Supp. 2d 574 (S.D.N.Y. 2013)...................................................... 12

*Conservation L. Found. v. Fed. Highway Admin.*,
   24 F.3d 1465 (1st Cir. 1994) ..................................................................... 5

*Cure Land, LLC v. U.S. Dep't of Agric.*,
   833 F.3d 1223 (10th Cir. 2016)...............................................................3, 4

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
   36 F.4th 850 (9th Cir. 2022)...................................................................... 6

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
   No. 16 Civ. 8418, 2017 WL 10607254 (C.D. Cal. July 14, 2017)............ 4

*Iazzetti v. City of New York*,
   94 N.Y.2d 183 (1999)............................................................................... 14

*Jersey Heights Neighborhood Ass'n v. Glendening*,
   174 F.3d 180 (4th Cir. 1999)..................................................................... 2

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) .................................................................. 2

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) ................................................................................. 2

*N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*,
   983 F.3d 1077 (9th Cir. 2020).................................................................. 6

*N.Y. C.L. Union v. Grandeau*,
   528 F.3d 122 (2d Cir. 2008).................................................................... 12

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ................................................................................. 11

*Native Songbird Care & Conservation v. LaHood*,
  No. 13 Civ. 2265, 2013 WL 3355657 (N.D. Cal. July 2, 2013) .......................................... 6, 7

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) ........................................................................................................... 3, 6

*Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*,
  334 F. Supp. 3d 66 (D.D.C. 2018) ......................................................................................... 2

*Rand v. Travelers Indem. Co.*,
  637 F. Supp. 3d 55 (S.D.N.Y. 2022) ................................................................................... 15

*Randall v. Dish Network, LLC*,
  No. 17 Civ. 5428, 2018 WL 3235543 (E.D.N.Y. July 2, 2018) ............................................ 15

*Shenandoah Valley Network v. Capka*,
  669 F.3d 194 (4th Cir. 2012) ................................................................................................. 2

*Shenandoah Valley Network v. Capka*,
  No. 07 Civ. 66, 2009 WL 2905564 (W.D. Va. Sept. 3, 2009) ................................................ 4

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  446 F.3d 808 (8th Cir. 2006) ................................................................................................. 3

*Sutherland v. Reno*,
  228 F.3d 171 (2d Cir. 2000) ................................................................................................... 9

*Taxpayers Opposed to Oz, Inc. v. Barram*,
  No. 00 Civ. 2136, 2000 WL 1595754 (D. Kan. Oct. 16, 2000) .............................................. 5

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................................................................. 12

*Walton v. N.Y. State Dep't of Corr. Servs.*,
  8 N.Y.3d 186 (2007) ............................................................................................................ 11

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
  758 F.3d 202 (2d Cir. 2014) ................................................................................................. 15

*Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*,
  No. 11 Civ. 1058, 2011 WL 6003959 (S.D.N.Y. Dec. 1, 2011) ............................................ 6

## STATUTES

23 U.S.C. § 101 ............................................................................................................................. 9

23 U.S.C. § 139 ................................................................................................ 1, 6, 8, 9

28 U.S.C. § 2401 ..................................................................................................... 8

49 U.S.C. § 5302 ..................................................................................................... 9

N.Y. C.P.L.R. § 7801 ............................................................................................ 11

N.Y. Pub. Auth. Law § 553 ................................................................................... 13

N.Y. Pub. Auth. Law § 1005 ................................................................................. 15

N.Y. Stat. Law § 238 ............................................................................................. 14

N.Y. State Administrative Procedure Act § 102 ....................................... 13, 14, 15

N.Y. State Administrative Procedure Act § 202 ................................................... 11

N.Y. State Administrative Procedure Act § 205 ................................................... 11

N.Y. Veh. & Traf. Law § 1704 .............................................................................. 13

## REGULATIONS

29 N.Y. Reg. 19 (May 9, 2007) ............................................................................ 13

39 N.Y. Reg. 11 (Mar. 15, 2017) .......................................................................... 13

40 C.F.R. § 1501.4 (2020) ...................................................................................... 2

40 C.F.R. § 1502.4 (2020) ...................................................................................... 2

45 N.Y. Reg. 52 (Dec. 27, 2023) .......................................................................... 13

46 N.Y. Reg. 10 (Mar. 6, 2024) ............................................................................ 15

88 Fed. Reg. 41998 (June 28, 2023) ................................................................... 1, 9

## OTHER AUTHORITIES

N.Y. Const. art. IV, § 8 ......................................................................................... 11

## PRELIMINARY STATEMENT[1]

Plaintiffs complain that Defendants have somehow effectively set a trap, where all potential challenges to the EA and FONSI are either too late or too early, thereby insulating the congestion pricing program from judicial review. But there is no such trap. There is simply a failure by Plaintiffs to comply with the timing rules that govern their claims. Looking back, Plaintiffs had a 150-day window to bring challenges under NEPA to the sufficiency of the Final EA and FONSI—they failed to file within that timeframe. As a result, their claims are time-barred, and the excuses they offer for missing the deadline are all meritless. Looking forward, after a reevaluation of the final tolling structure is completed (and a determination of whether any supplemental NEPA review is warranted), and upon signing of the VPPP agreement (which has yet to occur), Plaintiffs could challenge that decision—but it is now too early for them to challenge the speculative result of an incomplete process.

In addition, the Court should dismiss the SAPA claim in *New Yorkers*. Because the challenged ratemaking is not yet effective, Plaintiffs' claim is not ripe; and even if it were, Plaintiffs' arguments lack merit.

## ARGUMENT

### I.    Plaintiffs' Challenges to the Final EA and FONSI Are Time-Barred

Plaintiffs had to seek judicial review of the Final EA and FONSI "within 150 days after publication of a notice in the Federal Register," 23 U.S.C. § 139(l)(1), which in this case was November 27, 2023. *See* 88 Fed. Reg. 41,998. Plaintiffs failed to file in time. Mot. 7-8. Their claims are thus time-barred, and their attempts to escape that conclusion are baseless.

---

[1] All abbreviations have the meaning given in Defendants' opening brief, *Mulgrew*, ECF 53; *New Yorkers*, ECF 63. Citations to "Mot. __" refer to pages of that brief. Citations to "*Mulgrew* Opp. __" refer to pages of the *Mulgrew* Plaintiffs' opposition brief, *Mulgrew*, ECF 62. Citations to "*New Yorkers* Opp. __" refer to pages of the *New Yorkers* Plaintiffs' opposition brief, *New Yorkers*, ECF 74.

### A.    Plaintiffs' Arguments in *Mulgrew* Are Meritless

The issuance of a FONSI constitutes final agency action subject to judicial review. *See* 40 C.F.R. § 1501.4 (2020); *see, e.g.*, *Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66, 73 (D.D.C. 2018); *see also Bennett v. Spear*, 520 U.S. 154, 178 (1997) (listing factors courts consider in assessing final agency action). Plaintiffs dispute this premise, arguing instead that the FONSI here was tentative and therefore the statute of limitations did not start running at the time of the FONSI's publication. *See Mulgrew* Opp. 20-26. In support of this argument, Plaintiffs essentially advance two propositions: (1) the issuance of the FONSI was tentative, as "one step of a longer, agency process, ending with the adoption of the actual tolling structure," *id.* at 21-24; and (2) "[n]o legal consequences flow from the issuance of the EA and FONSI," *id.* at 25-26. As discussed below, Plaintiffs err on both counts. If they were correct, then their claims would still not be judiciable as they would be premature until a VPPP Agreement is executed.

***The FONSI was final and not tentative***. As an initial matter, agencies regularly engage in tiered or multiphase analysis when evaluating the environmental effects of proposed projects. *See* 40 C.F.R. § 1502.4(b)(2) (2020); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 363-65, 370-74 (1989); *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 196 (4th Cir. 2012) ("Agencies are encouraged to conduct a 'tiered' or multiphase analysis when contemplating large or complex projects … to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review."). These "long, complex endeavors" often have "clear milestones." *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 188-89 (4th Cir. 1999). Those milestones inform later agency decision-making, where subsequent steps "focus on issues specific to the subsequent action and rely on the analysis of issues already decided." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1088 (9th Cir. 2003). That is analogous to what happened here: the Final EA and FONSI represented, respectively, FHWA's evaluations

and findings that the Project will not have significant impacts, TMRB and TBTA relied on those evaluations and findings in recommending and adopting, respectively, a tolling structure, and the reevaluation of the adopted tolling structure will assess whether the predicted effects of that structure are *consistent* with the Final EA and FONSI.

In these circumstances, litigants who challenge a FONSI must do so when it is issued, not later, after subsequent steps relying on the FONSI's findings occur. For example, in *Sierra Club v. United States Army Corps of Engineers*, the Eighth Circuit held that a FONSI was "final" even though "the federal agencies must take several more actions before their decision is final and [the major federal action] contemplated in the NEPA compliance documents could begin." 446 F.3d 808, 815 (8th Cir. 2006). As the court explained, "[t]he Supreme Court has strongly signaled that an agency's decision to issue either a FONSI or an [EIS] is a 'final agency action' permitting immediate judicial review" based on how NEPA operates: individuals with standing to sue under NEPA who are "'injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place.'" *Id.* (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998)). To deny review when additional steps are required before the proposed action could go into effect, the Eighth Circuit concluded, "would undermine the purpose of judicial review under NEPA—to 'ensure that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast.'" *Id.*

This conclusion holds true even if the federal agency recognizes that supplemental analysis may be necessary later down the line. For example, in *Cure Land, LLC v. United States Department of Agriculture*, the agency issued a FONSI regarding an amendment to a program before the exact terms of the amendment had been finalized, recognizing that it may need to revisit the FONSI based on the amendment's final terms. 833 F.3d 1223, 1231 (10th Cir. 2016). The court rejected

the argument that the FONSI in that case was not final, finding the lack of specific terms "irrelevant." *Id.* It also deemed irrelevant "the FONSI's caveat that the agency may revisit the FONSI if the proposed amendment undergoes 'a significant expansion or increase,'" because that fact is effectively "true of any major federal project, whether or not it is stated explicitly." *Id.*[2]

Here, Plaintiffs focus on how TMRB and TBTA acted following the FONSI. But state agencies regularly engage in conduct in direct response to final federal agency actions—and that responsive conduct does not undo the finality of the federal agency action. In fact, the very opposite is true. The findings of the FONSI, which result from independent federal agency review and address issues such as mitigation, provide important input into the state process. And the final nature of the FONSI is what allows the state actors to reasonably rely on and incorporate those findings. *See, e.g.*, *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, No. 16 Civ. 8418, 2017 WL 10607254, at *7 (C.D. Cal. July 14, 2017); *cf. Shenandoah Valley Network v. Capka*, No. 07 Civ. 66, 2009 WL 2905564, at *13 (W.D. Va. Sept. 3, 2009).

Plaintiffs' reliance on FHWA's commitment to conducting a reevaluation is similarly self-contradicting. Plaintiffs say, on one hand, that "[a] 're-evaluation' is not a supplemental environmental analysis and it does not reopen the NEPA process." *Mulgrew* Opp. 31. But at the same time, on the other hand, they say that "[i]t is hard to see how the FONSI could be construed as the consummation of FHWA's decision-making, when the agency expressly preserved a later

---

[2] Plaintiffs contend that *Cure Land* is "readily distinguishable" because "a supplemental environmental analysis *was* performed" in that case. *Mulgrew* Opp. 26. But *Cure Land* involved a supplemental assessment because the proposed action at issue was an *amendment* to an existing, federally approved program. 833 F.3d at 1227-28. Therefore, a supplemental assessment was the only assessment conducted in that case, and it occurred before the amendment's terms were finalized, not after, as Plaintiffs suggest. *Id.* at 1228-29. Moreover, the FONSI, which was based on that supplemental assessment, explicitly recognized that the exact contours of the proposed amendment "ha[d] not been finalized." *Id.* at 1230.

re-evaluation." *Id.* at 22. As a matter of common sense, both cannot be true. And as the above cases instruct, it's the FONSI that starts the clock, regardless of what other acts may follow.[3]

Finally, to the extent Plaintiffs argue that the FONSI could not have been final because it did not study the exact contours of the tolling program—and instead assessed the worst-case impacts across a range of scenarios—that too lacks support. *See supra* 2-4; *see also, e.g.*, *Conservation L. Found. v. Fed. Highway Admin.*, 24 F.3d 1465, 1474 (1st Cir. 1994) (rejecting factual differences between studied scenarios and the final scenario of a highway construction project as enough to render an EIS unlawful). And Plaintiffs' assertion that it was TMRB's recommendation that made the FONSI final, not FHWA's issuance of the FONSI, blinks reality— a mere state advisory board (TMRB) cannot bring federal agency action to an end, whereas it makes perfect sense that FHWA (the federal agency tasked with conducting the relevant actions under NEPA) finalized the federal NEPA process for this stage of decision-making.

**The FONSI had legal consequences**. Plaintiffs are wrong to suggest that the FONSI did not have any legal consequences. *Mulgrew* Opp. 25 (arguing that "they neither granted nor denied rights, they imposed no legal obligations, exposed no individual to penalties, and in no way tied the government's hands"). By Plaintiffs' logic, no final agency action will occur until FHWA and the Project Sponsors sign a VPPP agreement. And if that logic were accepted, then every case that has found a FONSI to be a final agency action would be wrong, and (as noted earlier) all of Plaintiffs' challenges (and every one of five lawsuits asserting claims under NEPA) would be entirely unripe. But that logic is flawed. The FONSI enabled the state administrative process to

---

[3] *Taxpayers Opposed to Oz, Inc. v. Barram*, the only case Plaintiffs cite where a FONSI was held not to be final, supports Defendants. There, the plaintiff challenged a proposed U.S. military project that was subject to review under both NEPA and NHPA. The court found the suit premature because, while NEPA review had resulted in a FONSI, the NHPA review process was still ongoing. If, as here, "the [proposed] action necessitated only a review under the NEPA," then the FONSI "would clearly meet the APA's final agency action requirement." No. 00 Civ. 2136, 2000 WL 1595754, *4 (D. Kan. Oct. 16, 2000).

proceed "informed by the results of the Final EA," FONSI at 34, thus creating clear legal consequences, *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868-69 (9th Cir. 2022), and the FONSI and EA contain the purported procedural flaws that Plaintiffs assert in bringing their untimely lawsuit, thereby allegedly affecting their legal rights, *Ohio Forestry*, 523 U.S. at 737.

**The new information exception does not apply**. Plaintiffs also argue that their claims are timely because they are based on "new information" in the context of Section 139(l)(2), which, according to Plaintiffs, creates a "de facto exception" to the limitations period. *Mulgrew* Opp. 17-20. Plaintiffs are mistaken.

Section 139(l)(2) provides that the agency "shall consider new information received after the close of a comment period if the information satisfies the requirements for a supplemental [EIS] under section 771.130 of title 23, Code of Federal Regulations. The preparation of a supplemental [EIS] when required shall be considered a separate final agency action and the deadline for filing a claim for judicial review of such action shall be 150 days after" it is published. Under this provision, the "statute of limitations in § 139(l)(1) does not apply to 'new information'" to the extent it implicates significant environmental impacts of the proposed action not previously analyzed. *Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*, No. 11 Civ. 1058, 2011 WL 6003959, at *4 (S.D.N.Y. Dec. 1, 2011) (citing 23 C.F.R. §771.130(a)(1)-(2)).

But this provision (by its explicit terms) governs only supplementation claims; it does not revive old claims about the original decision. Indeed, courts regularly reject attempts by parties to challenge flaws in original NEPA documents outside the limitations period under the guise of so-called "new information." *See Yorkshire Towers Co.*, 2011 WL 6003959, at *4, *6; *see also N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077, 1081, 1096 (9th Cir. 2020); *Native*

6

*Songbird Care & Conservation v. LaHood*, No. 13 Civ. 2265, 2013 WL 3355657, at *4-5 (N.D. Cal. July 2, 2013). As explained below, that is precisely what Plaintiffs try to do here.[4]

**Principles of equity do not support Plaintiffs**. Plaintiffs' argument that it would somehow be unfair to hold them to the 150-day limitations period is unfounded.

Plaintiffs attempt to present this dispute as if TMRB's recommendation is "the basis of Plaintiffs' claims." *Mulgrew* Opp. 18, 27-28. The Amended Complaint, however, tells a different story. There, Plaintiffs assert that FHWA violated NEPA by: (1) leaving "the main tolling program structure to the TMRB," *Mulgrew* ¶ 147, a fact clearly stated in the EA and FONSI, Final EA at 53; FONSI at 33-34; and (2) failing to "analyze the actual tolling proposal," *Mulgrew* ¶ 149, something that the EA and FONSI also expressly contemplated and acknowledged, Final EA at 53, 194; FONSI at 9, 33-34. Plaintiffs also allege that FHWA acted arbitrarily and capriciously by failing to: (3) "prepare an EIS"; (4) "consider the full extent of the direct, indirect, and cumulative effects of" the Project; (5) "fully mitigate the air, noise, and traffic effects on New York and New Jersey residents"; (6) "fully consider Congestion Pricing's impact on and sufficiently consult with communities with environmental concerns"; (7) "consider a reasonable range of alternatives"; and (8) "provide adequate public participation in a process that failed to present the actual tolling structure and lasted but 44 days." *Mulgrew* ¶ 149. These claims take issue with specific aspects of the EA and FONSI and have nothing to do with the adopted tolling structure whatsoever.

In that respect, Plaintiffs knew everything they needed to know to bring their claims against the EA and FONSI in a timely manner. Their failure to do so within 150 days reflects their own lack of diligence, not any unfairness in the law. TMRB's recommendation is not "new

---

[4] Plaintiffs try to distinguish *Native Songbird* by noting that the court there found the new information was insignificant. *Mulgrew* Opp. 19-20. True, but that point went to the merits of the plaintiffs' *supplementation* claim. 2013 WL 3355657, at *5-8. It played no role in the court's determination that a challenge to the *initial* assessment was time-barred and any timely claim was limited to whether a supplement was required. *Id.* at *4-5.

information" that suddenly made Plaintiffs' claims possible. How, for instance, is it true that Plaintiffs could not have brought a claim that FHWA did not allow for adequate public participation on the EA until after TMRB's recommendation? The opportunity for public participation was over once the FONSI was issued. Moreover, as indicated above, the EA and FONSI expressly acknowledged that TBTA could select a tolling structure not exactly equivalent to the scenarios described in the EA. In other words, it was no secret that the EA and FONSI may not have studied the adopted tolling structure. Plaintiffs' claim that it was arbitrary and capricious not to wait until a specific structure was adopted effectively imposes a duty on agencies to analyze the exact contours of the contemplated action for a FONSI to be valid—a premise inconsistent with the caselaw, *see supra* 2-5, as well as good planning principles, but nonetheless an argument available to Plaintiffs from the outset, *see Mulgrew* Opp. 18 (explaining that the "actual tolling structure" was "unknown to FHWA at the time of the FONSI").

FHWA is now undertaking a reevaluation to see if the effects of the adopted tolling structure are consistent with the FONSI or if additional NEPA review is necessary. *See* Mot. 5. Plaintiffs may challenge that decision, however it turns out, once *it* becomes final. But Plaintiffs cannot levy untimely challenges against the previous final decision during this interim stage. Plaintiffs had a clear window to challenge the FONSI (as others, in fact, did); but they failed to do so. There are no equitable concerns in enforcing the limitations period and holding Plaintiffs to the consequences of their choices. By contrast, allowing Plaintiffs to assert tardy claims would not only prejudice Defendants, who have relied on the EA's evaluations and the FONSI's findings as they have moved the process forward, but would be inconsistent with Congress's intent, reflected in the shortened statute of limitations in these circumstances. *Compare* 23 U.S.C. § 139(l)(1) (150 days), *with* 28 U.S.C. § 2401(a) (six years for APA challenges).

**B.      Plaintiffs' Arguments in *New Yorkers* Are Likewise Meritless**

Plaintiffs in *New Yorkers* raise two arguments for why their claim is not time-barred. First, they say that the limitations period in Section 139(l)(1) does not apply. *New Yorkers* Opp. 8-9. Second, they assert that FHWA's review is not "final." *Id.* at 9-10. Both arguments are incorrect.

At the outset, Plaintiffs argue that Section 139(l)(1), which attaches to highway or public transportation capital projects, does not apply because the congestion pricing program is supposedly not such a project. *New Yorkers* Opp. 8-9. This argument is wrong under the clear terms of the statute: Section 139(a)(9)(A) defines "project" to "mean[] any highway project … that, if implemented as proposed by the project sponsors, would require approval by any operating administration or secretarial office within the Department of Transportation." *See also* 23 U.S.C. § 101(11) (defining "highway" to include "road[s]" and "street[s]"). The FHWA's notice reasonably determined that the congestion pricing program is a "highway project" subject to federal approval under Section 139(a)(9)(A). 88 Fed. Reg. 41,998; *Sutherland v. Reno*, 228 F.3d 171, 173 (2d Cir. 2000) ("[F]ederal courts must accord substantial deference to an agency's interpretation of the statutes it is charged with administering.").[5] The Project will impose tolls on vehicles that enter the Central Business District, a network of roadways that includes federal-aid highways. Final EA at 46. Because the program will toll these highways, the Project Sponsors need approval from FHWA under the VPPP, and FHWA had to analyze the Project under NEPA before any tolling could occur. *New Yorkers* ¶ 125. The need for FHWA approval to toll federal-aid highways is the only reason NEPA applied and there was a FONSI to challenge in the first place. Simply put, Section 139(l)(1) applies, and Plaintiffs' NEPA claim is time-barred.

---

[5] Alternatively, the Project falls under Section 139(l)(1) because it is a "public transportation capital project" subject to federal approval. *See* § 139(a)(9)(A). Under the relevant statute, "capital projects" include projects for improvements to public transportation. *See* 49 U.S.C. § 5302(4). Here, there is no dispute that the Project is meant to provide MTA with much-needed capital for improvements to the region's public transportation system.

And Plaintiffs cannot avoid the consequences of the clear statutory time bar by asserting that the Final EA and FONSI were not final agency action. *See supra* 2-6. Like the Plaintiffs in *Mulgrew*, these Plaintiffs could have brought their claim during the limitations period. The *New Yorkers* Amended Complaint alleges that Defendants violated NEPA by failing to: (1) "consider direct, indirect and cumulative effects" of the Project; (2) "propose adequate mitigation measures to alleviate the negative environmental consequences of air pollution, congestion, health risks and impacts upon environmental justice communities"; (3) "consider reasonably viable alternatives"; (4) "assess the negative and adverse socioeconomic impacts upon small businesses"; (5) "assess the impact upon the current infrastructure and safety elements of mass transit"; (6) "assess the actual tolling alternative that will be selected"; and (7) "provide for adequate public participation in the preparation of the FONSI." *New Yorkers* ¶ 167. All these arguments were available to Plaintiffs the moment FHWA issued the Final EA and FONSI. *See supra* 7-8.[6]

## II.    **Plaintiffs' Arguments Against Dismissing the SAPA Claim Fall Short**

Plaintiffs' SAPA claim is not ripe, and is meritless in any event. *See* Mot. 9-17. Plaintiffs' attempts to resist these conclusions are not responsive, misstate the law, and distort the Court's inquiry. *See New Yorkers* Opp. 13-19.

### A.    **The SAPA Claim Is Not Ripe**

Defendants had argued that the Court lacks jurisdiction over Plaintiffs' SAPA claim because the administrative process is not final, and their claim is therefore unripe. *See* Mot. 10-12. In response, Plaintiffs concede that the administrative process is not final. *See New Yorkers* Opp. 14-15. Plaintiffs maintain that the Court should not enforce "the administrative exhaustion doctrine" because exhaustion would be "futile" and requiring it would be "highly prejudicial and

---

[6] Plaintiffs gesture vaguely to the re-opening doctrine, but do not argue that it applies. *New Yorkers* Opp. 10.

harmful." *Id.* Finality and exhaustion, of course, are "conceptually distinct" requirements, however. *Walton v. N.Y. State Dep't of Corr. Servs.*, 8 N.Y.3d 186, 195 (2007). But even if the Court were inclined to construe Plaintiffs' arguments as addressing whether jurisdiction is proper, those arguments fall apart when tested against the governing standard.

In assessing ripeness, courts "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Plaintiffs' SAPA claim is not fit for judicial resolution: only "effective" rules can be challenged on the "grounds of noncompliance with [SAPA's] procedural requirements," SAPA § 202(8), and a rule cannot become effective before a notice of adoption has been filed with the Secretary of State, *id.* § 202(5)(a); N.Y. Const. art. IV, § 8. Here, given that multiple steps remain before the tolls can be implemented, no such filing has occurred yet. Because the ratemaking Plaintiffs challenge is not yet effective, New York courts would decline to exercise jurisdiction over it, N.Y. C.P.L.R. 7801(1), and this Court should too, *see* Mot. 10-12.

Plaintiffs argue that waiting would "serve[] no purpose" because, in their view, Defendants have wrongly proceeded under a Type (ii) ratemaking and therefore will not switch course and conduct the relevant economic assessments necessary only for certain Type (i) rules. *New Yorkers* Opp. 15-16. This position would destroy the finality requirements under SAPA and Article 78 entirely, as it would apply to theoretically every procedural error committed by an agency during any rulemaking process, opening up every rulemaking to a succession of challenges before a rule becomes effective. It is surely no reason for this Court to exercise jurisdiction now.[7]

---

[7] Plaintiffs also argue that Defendants "fail to recognize that Plaintiffs are not challenging a specific rule" and instead "are challenging an administrative process." *New Yorkers* Opp. 14. But SAPA provides a right to judicial review of "rules." SAPA § 205; *see also id.* § 202(8). There is no general right to judicial review of the "administrative process" itself.

Indeed, waiting until the SAPA process is complete would not be "highly prejudicial and harmful to Plaintiffs," as they suggest. *Id.* In assessing hardship, courts ask "whether the challenged action creates a direct and immediate dilemma for the parties." *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 134 (2d Cir. 2008). Here, Plaintiffs complain of potential problems that could arise in the future, but fail to identify any present hardship to Plaintiffs now. *New Yorkers* Opp. 15. Nor could they—no one is currently facing or will face Central Business District tolls until the ratemaking is effective, FHWA completes the re-evaluation, FHWA and Project Sponsors enter into a VPPP agreement, and TBTA implements the toll rate schedule. Because Plaintiffs are "not required to engage in, or to refrain from, any conduct," they cannot demonstrate hardship. *Texas v. United States*, 523 U.S. 296, 301 (1998).[8]

### B.     The SAPA Claim Fails as a Matter of Law

The proposed ratemaking concerns a Type (ii) rule under SAPA. Mot. 12-17. Plaintiffs offer the following two reasons for why it should instead be considered a Type (i) rule, thereby requiring TBTA to conduct certain economic assessments: (1) because it "prescribes a fee," *New Yorkers* Opp. 16-17, and (2) because it "implements or applies law," *id.* at 18-19. Both arguments are meritless.

*First*, the proposed rule does not "prescribe[] a fee." "Fee" is not defined by SAPA, but dictionaries define it as "a fixed charge" or "a sum paid or charged for a service." *Fee*, Merriam-Webster Dictionary; *see also Fee*, Black's Law Dictionary (11th ed. 2019) ("A charge or payment for labor or services ...."). But the tolling structure is not "fixed" and is instead variable based on

---

[8] Plaintiffs' undeveloped suggestion that they should be free to amend their complaint should the Court dismiss the SAPA claim on ripeness grounds presumes that such a dismissal would be with prejudice. But dismissals based on ripeness concerns are generally without prejudice to proceeding with a challenge once ripe. *See, e.g., Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 638 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83 (2d Cir. 2019). In all events, the proposed amendment would be futile for the reasons discussed in Part II.B.

a number of predetermined criteria, making "rate" more apt in these circumstances. *See* Mot. 12-17. Indeed, TBTA has long treated the adoption of similar toll rate schedules for tolling programs as prescribing "rates" rather than prescribing "fees," *id.* at 16 n.10,[9] a distinction consistent with TBTA's enabling act, N.Y. Public Auth. Law § 553(12) (describing TBTA's power to charge "tolls, fees or rentals" and referring to the agency's "toll rates").[10]

More importantly, however, Plaintiffs' argument is self-defeating. Even if TBTA's proposed rule is understood as prescribing a "fee," the agency would be under no obligation to conduct the relevant economic assessments—the toll rate schedule does not indicate any charge greater than $54.00, 45 N.Y. Reg. 52 at 46-48 (Dec. 27, 2023), and SAPA expressly exempts fees that are less than $100 from its rulemaking requirements altogether, *see* SAPA § 102(2)(b)(xi)(2). In other words, even assuming for the sake of argument that this were a fee (and it is not), because TBTA under such hypothetical would be charging a fee of less than $100, SAPA would not require it to engage in any rulemaking at all, let alone to undertake the procedural requirements Plaintiffs identify. The fact that TBTA would have gone further than necessary with respect to its procedures is of no consequence. *Cf. Boundless Energy NE, LLC v. Pub. Serv. Comm'n of State of N.Y.*, 63 N.Y.S.3d 182, 187 (N.Y. Sup. Ct. 2017) (explaining that "an agency act that does not amount to a

---

[9] Since 2007, TBTA has adopted Type (i) rules on two occasions. The first repealed a prohibition on "ready-mix concrete vehicles over a certain volume from traveling in or upon TBTA bridges and tunnels." 29 N.Y. Reg. 19 (May 9, 2007). The second involved a "[p]roposal to strengthen toll violation enforcement" and established a "toll violation fee" ranging from $50 to $100 for "[t]he owner of any vehicle which violates toll collection regulations by crossing a bridge or tunnel without paying the crossing charge prescribed." 39 N.Y. Reg. 11 (Mar. 15, 2017) (codified at 21 N.Y.C.R.R. § 1021.3). Neither rulemaking bears any resemblance to the agency's ratemakings, which set the toll charges applicable to vehicles that cross the agency's bridges and tunnels, *see* Mot. at 16 n.10, or, as relevant here, set the toll charges for the Central Business District, *see* 45 N.Y. Reg. 52 at 46-48 (Dec. 27, 2023).

[10] Plaintiffs argue that the "Traffic Mobility Act legislation is replete with references to 'fee' and 'fees.'" *New Yorkers* Opp. 18. But the Act draws a distinction between "tolls" and "fees," further supporting the understanding that the toll rates are not "fees." *See* N.Y. Veh. & Traf. Law §1704-a(1) ("[T]he [TBTA] shall have the power … to make rules and regulations for the establishment and collection of central business district tolls, fees, and other charges."); N.Y. Public Auth. Law § 553(12-a) ("The [TBTA] shall have the power … [t]o establish and charge variable tolls, fees and other charges for vehicles entering or remaining within the central business district and to make rules and regulations for the collection of such tolls, fees and other charges ….").

formal rule but nevertheless uses the formal rulemaking process need not be annulled—the agency has simply provided more process than required").

*Second*, Plaintiffs argue that the ratemaking should be classified as a Type (i) rule because it "implements or applies law." *New Yorkers* Opp. 18-19. In doing so, Plaintiffs fail to seriously engage with any of the arguments Defendants presented for why that language does not control in this case. *Compare id.*, *with* Mot. 16-17. Instead, Plaintiffs argue that applying the particular provision ("prescription" of "future" "rates" of "general … applicability") when implicated would require reading the general provision ("implements or applies law") "entirely out of the SAPA statute." *New Yorkers* Opp. 18. That is both nonsensical and baseless: it is black letter law that "whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular provision is inapplicable." *Iazzetti v. City of New York*, 94 N.Y.2d 183, 190 (1999); *accord* N.Y. Stat. Law § 238. Although the general provision has a role to play, it is not directly relevant here since the more particular provision clearly applies. *See* Mot. 16.

More fundamentally, Plaintiffs argue that "TBTA's role extends far beyond simply setting a toll" because the agency is responsible for implementing the Project more broadly. *New Yorkers* Opp. 18. But the agency's broader mandate regarding the Project's implementation is entirely beside the point here, which simply is whether the challenged toll rate schedule prescribes future rates. SAPA § 102(2)(a)(ii). It does. *See* Mot. 13-17. That the agency is also responsible for planning, designing, constructing, and maintaining the Project—responsibilities not even subject to SAPA's rulemaking requirements—has no bearing on this issue. *See* SAPA § 102(2)(a)(i) (limiting the definition of "rule[s]" to an "agency's statement[s], regulation[s], or code[s]"). As is the case here, agencies vested with ratemaking powers are often charged with implementing a

wider legislative scheme. *See, e.g.*, N.Y. Public Auth. Law § 1005 (setting forth the powers and duties of the New York State Power Authority). This doesn't mean that any time such ratemaking agencies prescribe rates that they must do so as Type (i) rules. *See, e.g.*, 46 N.Y. Reg. 10 (Mar. 6, 2024) (N.Y. State Power Authority notice of proposed ratemaking under SAPA § 102(2)(a)(ii)).

Finally, Plaintiffs assert that including criteria like "exemptions, discounts, credits, [and] time-of-day variations … go beyond mere toll/fee/rate making." *New Yorkers* Opp. 19. These criteria are all necessary ingredients of ratemaking because they establish the conditions for when certain rates apply as opposed to others. Including them in the proposed rule is fully consistent with ratemaking. *See Rate*, Merriam-Webster Dictionary (defining "rate" as "a charge, payment, or price fixed according to a ratio, scale, or standard").

## III.    Plaintiffs in *New Yorkers* Fail to Respond to Defendants' Arguments

In the *New Yorkers* action, Defendants moved to dismiss TMRB as a defendant and the NEPA claim (in the event it is found to be timely) to the extent it seeks relief that is unavailable under law. *See* Mot. 8-9, 17-18. On the first, Plaintiffs did not respond. *See generally New Yorkers* Opp. Their failure to oppose Defendants' motion is reason alone to grant it. *See Randall v. Dish Network, LLC*, No. 17 Civ. 5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (collecting cases). On the second, Plaintiffs offered a footnote, asserting without a single citation that declaratory class-wide relief in the form of monitoring is still available even if class claims are dismissed. *See New Yorkers* Opp. 6 n.2. But that is not the law. *See Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) ("[A] a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."); *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) ("Medical monitoring is not an independent cause of action under New York law.").

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' opening brief, the Court should

grant Defendants' motion in full.


Dated: April 22, 2024                                  Respectfully submitted,

SYLVIA O. HINDS-RADIX                          /s/ Mark A. Chertok
Corporation Counsel of the City of New York      Mark A. Chertok
                                                 Elizabeth Knauer
By: /s/ Nathan Taylor                            John F. Nelson
      Nathan Taylor                              SIVE, PAGET & RIESEL, P.C.
      Senior Counsel                             560 Lexington Avenue, 15th Floor
      Environmental Law Division                 New York, New York 10022
      New York City Law Department               (212) 421-2150
      100 Church Street                          mchertok@sprlaw.com
      New York, NY 10007                         eknauer@sprlaw.com
      Telephone: 212-356-2315                    jnelson@sprlaw.com
      ntaylor@law.nyc.gov
                                                 /s/ Roberta A. Kaplan
Counsel for Defendant the New York City          Roberta A. Kaplan
Department of Transportation                     Gabrielle E. Tenzer
                                                 KAPLAN HECKER & FINK LLP
                                                 350 Fifth Avenue, 63rd Floor
                                                 New York, New York 10118
                                                 (212) 763-0883
                                                 rkaplan@kaplanhecker.com
                                                 gtenzer@kaplanhecker.com

                                                 Joshua Matz
                                                 Kate Harris (admitted pro hac vice)
                                                 KAPLAN HECKER & FINK LLP
                                                 1050 K Street NW, Suite 1040
                                                 Washington, DC 20001
                                                 (212) 763-0883
                                                 jmatz@kaplanhecker.com
                                                 kharris@kaplanhecker.com

                                                 Counsel for Defendants the
                                                 Metropolitan Transportation Authority,
                                                 the Triborough Bridge and Tunnel
                                                 Authority, and the Traffic Mobility
                                                 Review Board