```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MICHAEL MULGREW, et al.,                    :
                                            :
                            Plaintiffs,     :
                                            :
            - against -                     :   Civil Case No. 1:24-cv-01644-LJL
                                            :
UNITED STATES DEPARTMENT OF                 :   [rel. 1:23-cv-10365-LJL]
TRANSPORTATION, et al.,                     :   [rel. 1:24-cv-000367-LJL]
                                            :
                            Defendants.     :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR LEAVE TO AMEND TO ASSERT CLAIMS AGAINST STEPHANIE WINKELHAKE IN HER OFFICIAL CAPACITY**

**TABLE OF CONTENTS**

I. Sovereign Immunity Does Not Bar Federal Claims Against Defendant Winkelhake Because The Complaint Alleges An Ongoing Violation Of Federal Law And Seeks Prospective Relief ................................................................................................................... 3

    A. Winkelhake Has a Sufficient Connection to the NEPA Violations, Which Is Based on the Deficiencies of the EA and FONSI—Including Mitigation—and Continuing with the Project's Implementation ......................................................... 4

    B. Winkelhake Has a Sufficient Connection to the Federal Constitutional Violations, Which Are Based on the Toll Being Excessive in Relation to the Local Benefits Conferred ............................................................................................................. 7

    C. This Court Has Jurisdiction Over Winkelhake Based on Requested Enjoining the EA and FONSI ................................................................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*Ex parte Young*,.....................................................................................................................2
   209 U.S. 123 (1908)

*McKethan v. N.Y. State Dep't of Corr. Servs.*,
   No. 10 CIV. 3826 PAE, 2012 WL 2367033 (S.D.N.Y. June 21, 2012) ...............................2, 3

*New York v. U.S. Nuclear Regul. Comm'n*,
   589 F.3d 551 (2d Cir. 2009)..................................................................................................6

*Pugh v. Goord*,
   571 F. Supp. 2d 477 (S.D.N.Y. 2008)................................................................................3, 5

*Saba v. Cuomo*,
   535 F. Supp. 3d 282 (S.D.N.Y. 2021)..................................................................................10

*Selevan v. N. Y. Thruway Auth.*,
   584 F.3d 82 (2d Cir. 2009)....................................................................................................8

*Seneca Nation v. Hochul*,
   58 F.4th 664 (2d Cir. 2023) ...............................................................................................3, 5

**Statutes**

23 U.S.C. 106 ............................................................................................................................6

23 U.S.C. § 106 ..........................................................................................................................6

23 U.S.C. § 139(c)(3)..................................................................................................................5

23 U.S.C. § 139(c)(4)..................................................................................................................7

N.Y. Veh. & Traf. L. § 1704-a(3)...............................................................................................7

NEPA ................................................................................................................................ *passim*

Traffic Mobility Act....................................................................................................................8

**Other Authorities**

23 C.F.R. § 771.109 (2018) .....................................................................................................5, 6

ii

**PRELIMINARY STATEMENT**

New York State Department of Transportation ("NYSDOT") and its Chief Engineer, Stephanie Winkelhake, do not deny any of Winkelhake and her predecessor's involvement in the environmental review of Congestion Pricing alleged in the Mulgrew[1] Cross-Motion to Amend (ECF 62) (hereinafter "Mulgrew Brief") or the Chan[2] Opposition to Winkelhake's Motion to Dismiss (ECF 77) (hereinafter "Chan Brief"). *See* NYSDOT & Winkelhake Opposition Brief (ECF 71) (hereinafter "Winkelhake Opposition"). Instead, NYSDOT seeks to raise the threshold for individuals that may be sued in their official capacity beyond "a connection with the act," arguing, first, that Winkelhake's role in the congestion pricing project is insufficient because Plaintiffs allegedly have not shown Winkelhake separately violated the law, as she has no authority over tolling, and implementation of mitigation has no relationship to the alleged NEPA violations. Second, Winkelhake argues that jurisdiction over NEPA claims does not exist because the complaints do not seek an injunction to stop congestion tolling, and even if they did, an injunction against Winkelhake would not be necessary or sufficient to stop the tolling because she does not have power over the tolling.

The arguments misconstrue both what is challenged in this action—the insufficient NEPA review process, which remains ongoing, not the implementation of Congestion Pricing or the "to be determined" mitigation measures—and the *Ex parte Young* exception to sovereign immunity. Winkelhake (or her predecessor at NYSDOT) signed the at-issue Environmental Assessment ("EA") and "Finding of No Significant Impact" ("FONSI") as one of the three Project Sponsors and one of four individual Project Representatives; she certainly has a sufficient connection to the

---

[1] *Mulgrew v. U.S. Dep't of Transp.*, No. 1:24-cv-01644-LJL (S.D.N.Y.).

[2] *Chan v. U.S. Dep't of Transp.*, No. 23-cv-10365-LJL (S.D.N.Y.).

1

acts being challenged. As for whether the violation is continuing, Winkelhake ignores the reality that the environmental review process is not complete. Congestion Pricing will not be implemented unless and until the Federal Highway Administration ("FHWA") (i) conducts its re-evaluation of the propriety of its FONSI, (ii) potentially conducts a supplemental analysis—which would include assistance from NYSDOT as a Project Sponsor and Winkelhake as a Project Representative—and (iii) enters into a tolling agreement under the federal Value Pricing Pilot Program ("VPPP") with the Project Sponsors. These steps in moving the unlawful program forward are sufficient on their own to show that Winkelhake has a "connection" with the ongoing unlawful acts. "Nothing more" is required. *See McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10 CIV. 3826 PAE, 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (citation omitted). Moreover, the complaints seek an injunction to vacate Defendants' Final EA and FONSI, in place of a full and proper Environmental Impact Statement ("EIS"), or in the alternative, declare that Defendants must conduct a full supplemental review and that the program violates Plaintiffs' constitutional rights. If the Court grants this relief, Defendants would not be able to proceed with Congestion Pricing (or an agreement under the VPPP) until Defendants prepare an in-depth EIS analyzing the project's environmental impacts and receive Defendants' final sign-off. Moreover, contrary to their arguments, the mitigation measures identified for which NYSDOT is responsible certainly have a relationship to the alleged NEPA violations concerning the propriety of the FONSI because the FONSI expressly relies on mitigation to maintain its finding of no significant impact. Additionally, the adequacy and study of proposed mitigation are at issue in this case. Because the complaints allege an ongoing violation of federal law and seek prospective relief based, in part, on Winkelhake's connection to the implementation and enforcement of the Project, the *Ex parte Young* exception applies. 209 U.S. 123 (1908).

Finally, because Plaintiffs only assert the NEPA and constitutional claims against Winkelhake in her official capacity, and do not assert any claims against NYSDOT following the Cross-Motion to Amend, the Court should deny Winkelhake's motion to dismiss these claims as moot. The Court should also deny Winkelhake's motion to dismiss Count V under New York's Green Amendment, given that Plaintiffs do not assert this claim against Defendant Winkelhake, and it is therefore inapplicable.

## ARGUMENT

I. **Sovereign Immunity Does Not Bar Federal Claims Against Defendant Winkelhake Because The Complaint Alleges An Ongoing Violation Of Federal Law And Seeks Prospective Relief**

As described more fully in the Chan and Mulgrew Memoranda of Law (ECF 77 and ECF 62, respectively), the *Ex parte Young* exception to sovereign immunity allows suit against state officials acting in their official capacity, and the "court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief." *Seneca Nation v. Hochul*, 58 F.4th 664, 670 (2d Cir. 2023) (citation omitted); Chan Brief at 6-7; Mulgrew Brief at 36-37. This requires only that the official "have a connection with the act, and nothing more." *McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10 CIV. 3826 PAE, 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (citation omitted); *Pugh v. Goord*, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) (citing cases).

Winkelhake does not challenge this legal principle, nor does she dispute any of the factual allegations surrounding her involvement in the project, which remains ongoing. Winkelhake Opp. at 4-5; Mulgrew Brief at 38-39; Chan Brief at 4-6.[3] Instead, Winkelhake argues that her connection

---

[3] Winkelhake's involvement includes: (i) helping prepare the EA and FONSI as Project Sponsor and Project Representative; (ii) participating in any supplemental analysis or creation of an EIS, depending on the results of FHWA's re-evaluation; (iii) entering into a tolling agreement with FHWA under the VPPP; (iv) allowing and

3

is not sufficient because "Plaintiffs have identified no such violation for which the Department or its chief engineer is responsible." Winkelhake Opp. at 4.

> A. *Winkelhake Has a Sufficient Connection to the NEPA Violations, Which Is Based on the Deficiencies of the EA and FONSI—Including Mitigation—and Continuing with the Project's Implementation*

As a Project Sponsor and Project Representative, it is undisputed that NYSDOT and Winkelhake worked closely with FHWA and its fellow Project Sponsors—Metropolitan Transportation Authority ("MTA") and New York City Department of Transportation ("NYCDOT")—in preparing the EA and FONSI, and continue to work closely with Defendants in implementing the project. Winkelhake Opp. at 6. The FONSI indicates that its conclusions are "submitted by" the Chief Engineer from NYSDOT. DOT_0000363. Winkelhake claims that despite this significant role, Winkelhake could not have violated NEPA because Plaintiffs do not allege that Winkelhake had "any involvement in [FHWA's] internal decisionmaking processes" for the EA or FONSI, "which are solely federal defendants' responsibility." Winkelhake Opp. at 6.

Although FHWA may be the lead agency in this NEPA process, Winkelhake cannot circumvent the reality that she and NYSDOT worked in tandem with FHWA and the other Project Sponsors throughout the entire NEPA process. In fact, a brief search of the administrative record for Winkelhake's predecessor, Nicolas A. Choubah, shows that he was mentioned or appeared in approximately 170 documents that Federal Defendants[4] certified were directly or indirectly

---

utilizing millions of dollars in toll revenue to implement mitigation measures, such as installing electric truck charging infrastructure; (v) monitoring traffic conditions on state highways; (vi) implementing traffic management measures; and (vii) allowing the project to use NYSDOT's roadways in its tolling scheme.

[4] Federal Defendants are U.S. Department of Transportation, FHWA, Shailen Bhatt, in his official capacity as Administrator of FHWA, and Richard J. Marquis, in his official capacity as Division Administrator of the New York Division of FHWA.

4

considered in connection with their review of the project under NEPA. *See* ECF 41. NYSDOT worked closely and collaboratively with FHWA throughout the drafting of the EA and FONSI. *E.g.*, DOT_0045081 (reflecting the attendance and participation of NYSDOT personnel, including Nicolas Choubah, at an FHWA Environmental Assessment meeting held to address EPA concerns).

The fact that FHWA stated that it independently evaluated the EA—as required when working with a project sponsor under 23 U.S.C. § 139(c)(3)—does not detract from Winkelhake's substantial involvement in the creation of the EA, FONSI, and the underlying documents and analyses in the administrative record that played a material role in the creation of these documents and the decision to forego an EIS. *Pugh*, 571 F. Supp. 2d at 514-15 (officer had personal involvement in act at issue where officer "was consulted" and "espoused views" that led to the creation of the allegedly unconstitutional policy); *see also* 23 C.F.R. § 771.109(b)-(c) (2018). Even if FHWA has lead responsibility for the creation of the EA and FONSI, Winkelhake's involvement in helping to prepare these documents and continuing to move forward with the project based on these documents clearly constitutes a sufficient "connection" with the unlawful acts in which she played a role. *See Hochul*, 58 F.4th at 670 ("To be sure, the invalidity of the easement is critical to plaintiff's case, but this suit is concerned with the *ongoing effect* of the invalidity.").

Further, Winkelhake treats the NEPA process as 100% complete, Winkelhake Opp. at 5-6, entirely ignoring Defendants' arguments that a "re-evaluation" of the environmental impact will still occur and that once FHWA (very likely) determines that the effects of the final tolling rates

and structure are consistent with the decision to issue a FONSI,[5] NYSDOT must still enter into an agreement with FHWA under the VPPP to implement the program (notwithstanding Plaintiffs' claims that additional environmental review is needed).  23 U.S.C. § 106.  Approval of the program under the VPPP requires a sufficient environmental review under NEPA, and Winkelhake would have a connection—indeed a direct role—in the unlawful act of giving final approval of a project based on an inadequate EA and FONSI.  23 C.F.R. § 771.109(d) ("When entering into Federal-aid project agreements pursuant to 23 U.S.C. 106, the State highway agency must ensure that the project is constructed in accordance with and incorporates all committed environmental impact mitigation measures listed in approved environmental review documents unless the State requests and receives written FHWA approval to modify or delete such mitigation features.").  Allowing Congestion Pricing to utilize NYSDOT's roadways to toll consumers following a procedurally deficient process only furthers Winkelhake's involvement.

Next, Winkelhake argues that "implementation of mitigation has no relationship to the alleged NEPA violations."  Winkelhake Opp. at 6.  The argument is simply untrue.  As set forth in Plaintiffs' summary judgment papers in *Chan*, the insufficiency of appropriate mitigation measures is a central component of the alleged NEPA violation.  The argument ignores that the FONSI could only remain valid—to the extent it ever was valid—through sufficient mitigation measures that would offset the project's environmental impacts.  DOT_0000363 ("This FONSI is based on the Final EA including appropriate mitigation measures."); *New York v. U.S. Nuclear Regul. Comm'n*, 589 F.3d 551, 555 (2d Cir. 2009) ("An agency may take into account attempts to mitigate an environmental impact when determining that an environmental impact is small enough

---

[5] If FHWA's re-evaluation concludes that a supplemental analysis or EIS is necessary, as Plaintiffs argue, it would be expected that Winkelhake would help prepare these documents.  23 C.F.R. § 771.109(c).

6

to not require an EIS, so long as the effectiveness of the mitigation is demonstrated by substantial evidence.") (citing *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 17 (2d Cir. 1997)).  Winkelhake, as Project Sponsor, is also required to comply with all design and mitigation commitments identified in the EA and FONSI, to the extent there has been a concrete commitment set by those documents.  23 U.S.C. § 139(c)(4).  The details of certain mitigation measures remain undecided and certainly NYSDOT will play a role in finalizing the "to be determined" actions.  As Defendants' have pointed out in their briefing "[t]he ultimate tolling proposal will determine the effects of the Project, and, in turn, the mitigation necessary to ameliorate those effects."  *Chan*, Fed. Opp. Br. at 44 n.29 (ECF 65).  Accordingly, Winkelhake's role in preparing the EA and FONSI, her need to enter into an agreement under the VPPP, and the implementation of mitigation measures have a strong relation to, let alone a simple "connection" with, the propriety of the challenged agency documents.

Winkelhake attempts to "save" three of its cited cases, which Plaintiffs distinguished in detail.  *See* Winkelhake Opp. at 8-9; Chan Brief at 10-12; Mulgrew Brief at 39-40, 40 n.36.  In doing so, she improperly tries to raise the standard from a "connection" to an unlawful act to having primary statutory authority over the decisions.

> B. *Winkelhake Has a Sufficient Connection to the Federal Constitutional Violations, Which Are Based on the Toll Being Excessive in Relation to the Local Benefits Conferred*

Winkelhake next argues that she has no connection to setting or collecting tolls, and a particular page of the EA cited by Plaintiffs (DOT_0036154) "does not indicate that the Department or its chief engineer had any input into the tolling scenarios developed for the assessment or, more importantly, the final tolls selected, an issue that by state statute is solely Triborough's responsibility."  Winkelhake Opp. at 7; *see also* N.Y. Veh. & Traf. L. § 1704-a(3).  First, this very page states that Triborough Bridge and Tunnel Authority ("TBTA") would work

7

on the resulting tolling program "in partnership with *[NYSDOT]* and [NYCDOT]." Chan Administrative Record at DOT_0036154 (emphasis added).

The EA further elaborates that FHWA *and the Project Sponsors* considered "a range of alternatives," "studied the No Action Alternative and the CBD Tolling Alternative," and the Project Sponsors "recommend the CBD Tolling Alternative for the Project." DOT_0036152 (emphasis added). Additionally, based on the EA and FONSI (documents prepared with significant NYSDOT involvement), Traffic Mobility Review Board ("TMRB") issued its recommended tolling structure, which was adopted by TBTA. FONSI at 26 ("The [TMRB]'s recommendation will be informed by the results of the Final EA."). Moreover, NYSDOT will allow these tolls to be implemented on its roadways and will allocate millions of dollars from these tolls towards certain mitigation measures. Chan Brief at 10; Mulgrew Brief at 38. Therefore, despite the Traffic Mobility Act not dictating specific authority to NYSDOT to set toll prices, NYSDOT (and Winkelhake) had a substantial connection to the selection and implementation of these tolls on its roadways.

In addition to the toll itself, any constitutional analysis under the dormant Commerce Clause or Privileges and Immunities Clause (Right to Travel) requires balancing the toll imposed in relation to the local benefits conferred, such as mitigation. *Selevan v. N. Y. Thruway Auth.*, 584 F.3d 82, 90, 102 (2d Cir. 2009); Winkelhake Opp. at 8. The mitigation measures set to be implemented by Winkelhake are insufficient compared to harms that will be caused by Congestion Pricing. Chan Brief at 10; Mulgrew Brief at 38. Thus, Winkelhake has a connection to both the creation of the toll, the enforcement of the toll on its roadways, and mitigation measures designed to counter the apparent harms of congestion pricing.

C.  This Court Has Jurisdiction Over Winkelhake Based on Requested Enjoining the EA and FONSI

Winkelhake admits that a nonfederal actor may be enjoined from completing the project before FHWA has provided proper NEPA review but argues that "[t]here is no basis for that jurisdiction here because plaintiffs have not sought to enjoin congestion tolling and even if they had, it would be neither necessary nor sufficient to sue Ms. Winkelhake to effectuate such an injunction." Winkelhake Opp. at 11. While Plaintiffs have not yet specifically sought to enjoin Congestion Pricing (a program that has yet to be finalized, according to Defendants), that is a distinction without any meaning. Plaintiffs seek "a permanent injunction vacating and setting aside Defendants' FONSI and Final EA and compelling Defendants to complete a full and proper EIS for the Congestion Pricing Plan." Chan Amended Complaint at 49 (ECF 39); Mulgrew Amended Complaint at 58 (ECF 19). As Winkelhake is well aware, the effect of such an injunction on Winkelhake would prevent FHWA and the Project Sponsors from being granted tolling authority under the VPPP to implement congestion pricing as currently laid out, would prevent Winkelhake from allowing tolls on its roadways prior to the creation of an EIS, and would prevent the implementation of mitigation measures that make up the FONSI. Creation of an EIS is also a far more in-depth environmental analysis compared to an EA, and it would likely require far more time before Defendants would be able to proceed with the project. Thus, Winkelhake's argument is unavailing. An injunction vacating the EA and FONSI would be sufficient to stop the project. *See* Winkelhake Opp. at 12.[6] That other forms of relief may also be sufficient to stop Congestion Pricing does not preclude suit from being brought against Winkelhake.

---

[6] Of course, an injunction against FHWA may also be sufficient, but this has no effect on whether Winkelhake has a connection to any unlawful acts under *Ex parte Young*.

9

Winkelhake next takes issue with Plaintiffs' request for a declaratory judgment that Congestion Pricing "not move forward" before a full supplemental environmental review is prepared. Winkelhake Opp. at 11. Winkelhake argues that unlike an injunction, a declaratory judgment "is not self-executing and is not subject to the irreparable harm and balance of the equities required for an injunction." *Id.* Even if true, Winkelhake fails to explain its relevance, given that declaratory relief, like an injunction, constitutes prospective relief under *Ex parte Young*, so long as it is not solely related to past actions. *Saba v. Cuomo*, 535 F. Supp. 3d 282, 300 (S.D.N.Y. 2021) (this Court stating that declaratory and injunctive relief are both considered prospective). The argument therefore fails.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Cross-Motion to Amend and deny Winkelhake's Motion to Dismiss.

Dated: New York, New York
April 29, 2024

STEPTOE LLP

By: */s/ Alan M. Klinger*
Alan M. Klinger
Dina Kolker
David Kahne
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
aklinger@steptoe.com

*Co-Counsel for the United Federation of Teachers and Individual Plaintiffs*

-and-

10

BETH A. NORTON, Esq.
United Federation of Teachers
52 Broadway
New York, NY 10004
(212) 701-9420

*Co-Counsel for the United Federation of Teachers and Individual Plaintiffs*

-and-

THE OFFICE OF LOUIS GELORMINO, Esq. &
FONTE & GELORMINO LEGAL GROUP
2550 Victory Blvd.
Suite 304
Staten Island, NY 10314
(917) 968-1619
(718) 720-4949

*Co-Counsel for Vito J. Fossella*

11