UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MICHAEL MULGREW, *et al.*,

                  Plaintiffs,

       - against -                         1:24-cv-01644 (LJL)
                                                     1:23-cv-10365 (LJL)

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELIZABETH CHAN, *et al.*,

                    Plaintiffs,

       - against -

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION ON THEIR CONSTITUTIONAL CLAIMS**

**PRELIMINARY STATEMENT**

Plaintiffs in the *Chan* and *Mulgrew* actions submit this joint Memorandum of Law in further support of Plaintiffs' Motion for a Preliminary Injunction (ECF Nos. 133, 121), which joined the motion for a preliminary injunction brought by Plaintiff Trucking Association of New York ("TANY"), in *Truckers Association of New York v. Metropolitan Transportation Authority, et. al*, 24-cv-41111 (S.D.N.Y.), with respect to the asserted constitutional claims and separately argued for injunctive relief with respect to Plaintiffs' Green Amendment claim.

To avoid unnecessary duplicate briefing, Plaintiffs again adopt the arguments set forth in TANY's reply memorandum of law in further support of its motion for a preliminary injunction (ECF No. 89) and briefly add the following points in response to Defendants' opposition papers.

**ARGUMENT**

**I.    Violation of The Dormant Commerce Clause and Right to Travel**

A.    <u>Likelihood of Success</u>:  Plaintiffs adopt and join in TANY's arguments on reply regarding likelihood of success on the merits.  *See* TANY's Reply Memorandum of Law in Further Support of Motion for Preliminary Injunction, 24-cv-4111 (S.D.N.Y.), ECF No. 89.   Additionally, Defendants have made three arguments in opposition to the motion meriting a response here: *First*, Defendants have broadly suggested that "reduced congestion" and "cleaner air" for the New York City region is sufficient to satisfy the fair approximation of use and excessiveness prongs of the *Northwest Airlines/Evansville* analysis.  They argue that "drivers in the Central Business District will receive the benefits of the congestion tolls that they are required to pay in the form of "reduced congestion and cleaner air," and cite *Angus Partners LLC v. Walder,* 52 F. Supp. 3d 546 (S.D.N.Y. 2016) and *Auto. Club of N.Y. & N.J. v. Port Authority of N.Y. & N.J.*, 887 F.2d 417 (2d Cir. 1989), for the supposition that "spillover" effects of Congestion Pricing are an appropriate consideration.

2

Putting aside that both *Angus Partners* and *Auto Club* are cases decided on summary judgment and on a full record of how the funds collected from the program would be expended (glaringly absent here), neither case suggests that a reduction in congestion alone is a sufficient benefit, nor do they deal with the circumstances confronting many of the *Mulgrew* and *Chan* Plaintiffs, who will be burdened by increased transportation costs *and* face higher localized pollution caused by displaced traffic in their home communities. Generalized benefits of "cleaner air" and "reduced congestion" for the CBD are entirely nonspecific to the actual payers of the Congestion Pricing toll. *See Am. Trucking Ass'ns v. N.Y. State Thruway Auth.*, 199 F. Supp. 3d 855, 878-79 (S.D.N.Y. 2016), *vacated on other grounds,* 238 F.Supp.3d 527 (S.D.N.Y. 2017) (toll unconstitutional where truck drivers may have been part of the general population that benefited from the overall economic benefits of the canal system, but did not benefit specifically in their role as toll paying truck drivers).

*Second*, Defendants have rehashed the argument that Congestion Pricing will take place within an "integrated transportation system" in order to insulate the program from constitutional scrutiny on the questions of its excessiveness and approximate use. Yet, the transportation systems in each of the three cases Defendants' cite *were* actually integrated. In *Angus Partners* and *Janes v. Triborough Bridge & Tunnel Auth.,* 977 F. Supp. 2d 320, 325-42 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 1052, the system at issue was the MTA, while in *Auto. Club*, the system at issue was the Port Authority of New York and New Jersey. The tolled facilities were controlled by the same entity as the projects being funded. Here, the tolled roads, tunnels and bridges under Congestion Pricing are not all controlled by the MTA, but all of the money flows exclusively to the MTA, with nothing being spent either to maintain those facilities or invest in public transportation that would receive certain displaced commuters. Many toll payers, including New Jersey drivers, are outside of the

3

MTA's coverage, and their toll paying is categorically not a fair approximation of their use of an integrated system, as they simply are not integrated into the system.

*Third*, and relatedly, Defendants make no attempt to justify the discriminatory impact on out-of-state commuters, as well as in-state non-MTA serviced areas.  Defendants argue only that the toll applies equally to all and that there are tax credits and discounts for various crossings.  Of course, this ignores the impact of the toll on the many drivers, including Plaintiffs, for which the toll cannot possibly fund any transit alternatives (even in an integrated MTA system).

B.     <u>Other Preliminary Injunction Factors</u>:  Plaintiffs adopt and join in TANY's arguments on reply with regard to the remaining factors required for a preliminary injunction.  Defendants argue in opposition that violations of constitutional rights do not amount to *per se* irreparable harm when the alleged constitutional injury is only economic in nature.  But even the cases Defendants' cite recognize that constitutional harm *is* irreparable "where it cannot be remedied through money damages."  *E.g., Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24-CV-01002 (NCM) (LGD), 2024 WL 3875793, at *8 (E.D.N.Y. Aug. 19, 2024).  Plaintiffs have alleged constitutional harms far beyond strict economic injury, including the inability to travel within the CBD and significant environment harm.  Chaim Katz Decl., ECF No. 78-14, ¶¶ 3-5, 13 (describing environmental harm to his large family and surrounding community); Rachel Ehrenpreis Decl., ECF No. 78-15, ¶¶ 1, 5 (describing environmental harm to herself and her family on the Lower East Side); Sean Carney Decl., ECF No. 78-16, ¶¶ 2-3 (describing environmental harm that will exacerbate existing medical conditions); Supplemental Declaration of Elizabeth Chan, ECF No. 78-4, ¶¶ 2-7 (describing environmental and other harms to her family).  The harm Plaintiffs have alleged is non-economic, irreparable and irreversible once the Congestion Pricing program begins.

4

## II. Violation of the New York State Constitution "Green Amendment"

A. <u>Likelihood of Success</u>: Defendants' briefs cite no case law in arguing that Plaintiffs' interpretation of the Green Amendment would: (1) invalidate NEPA and the State Environmental Quality Review Act ("SEQRA"); (2) ban public services that use cars; or (3) prevent renewables from being deployed, and the contentions put forward are simply untrue. *First*, NEPA and SEQRA are not substitutes for the Green Amendment. It is well-established that NEPA is a procedural law (*see Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756–57 (2004)), whereas the Green Amendment ensures New Yorkers' substantive right to "clean air and water, and a healthful environment."[1] The notion that the existence of the NEPA or SEQRA environmental review processes renders this state constitutional right – which has been held to create a separate private right of action – invalid, finds no support in the law. The Green Amendment was enshrined in the State Constitution decades after the promulgation of NEPA (and SEQRA) and neither statute occupies the entire field of substantive environmental protections. *Cohen v. Apple Inc*., 46 F.4th 1012, 1026 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2513 (2023) ("NEPA is a purely procedural statute" and "has no preemptive force").

---

[1] Contrary to the assertion that it is procedural only, Senator Jackson, a lead sponsor of the Green Amendment in 2021, made a direct comparison between the rights guaranteed under the Green Amendment and those guaranteed by the Education Article, a constitutional amendment protecting the individual rights of students to a "sound basic education." *See* New York State Senate Debate on Senate Bill S2072, Jan. 12, 2021, at 141-43.

Plaintiffs' claims are, in fact, similar to those raised by plaintiffs in *Campaign for Fiscal Equity v. State of New York*, 655 N.E.2d 661 (N.Y. 1995), arising out of the Education Article. There, plaintiffs argued that the system of funding for schools violated the constitutional provision, which provides that "[t]he legislature shall provide for the maintenance and support of a system of free common schools," and secures an individual right of students to a "sound basic education." *Id.* at 664. The Court of Appeals held, denying a motion to dismiss, that plaintiffs had alleged educational inadequacies that, if proven, could support a conclusion that the State fails to provide for a minimally adequate educational opportunity. *Id.* at 667.

Plaintiffs' case is similar to *Campaign for Fiscal Equity*. They have alleged individual injuries to their constitutional rights based on an ill-conceived policy scheme that worsens the pollution for many New Yorkers. That the Congestion Pricing program might improve environmental health for some does not rescue it if it hurts others in a concentrated fashion, any more than a scheme of education funding that improved test scores in Rye but hurt them in the Bronx would satisfy the Education Article under the *Campaign for Fiscal Equity* line of cases.

*Second*, Defendants once again rely on *Marte v. The City of New York*, No. 159068/2022, 2023 WL 2971394 (N.Y. Sup. Ct. Apr. 17, 2023), for the assertion that the Green Amendment was not intended to create a "second bite at the apple" or "a new pathway for litigants" seeking to challenge state action on an environmental basis. Yet, in that decision, which the court expressly found was "limited," the Green Amendment could not be used to bring additional challenges that were previously unsuccessful under SEQRA, years after an EIS, when the action was otherwise time-barred. *Id.* at *5. That is not the case here. Plaintiffs' claims under the Green Amendment are alleged alongside (and independent of) the NEPA challenge, are not otherwise time-barred and have credibly asserted, based on Defendants' own data, that Congestion Pricing will increase harmful pollution in Plaintiffs' communities.

*Finally,* tacitly acknowledging the Green Amendment's substantive application, Defendants suggest that the EA's finding of an overall decrease in emissions is sufficient to defeat Plaintiffs' Green Amendment claim. The argument is wholly unsupported in the existing Green Amendment cases, contradicted by the plain language of the Amendment and unsupportable as a matter of basic logic. While NEPA may focus on the significance of the overall impact on the human environment, the language of "the Green Amendment is clear," *Fresh Air for the Eastside v. State of N.Y.*, No. E2022000699, 2022 WL 18141022, at *10 (N.Y. Sup. Ct. Monroe Cnty, December 20, 2022), and requires state agencies to take appropriate action to ensure that their processes do not abridge individual environmental rights to "clean air and water, and a healthful environment." In fact, the "justification" portion of the Senate Bill Sponsor Memo reflects that the legislative intent was not merely symbolic, but instead designed to address "[r]ecent water contamination and ongoing concerns about air quality," and therefore proposed the constitutional amendment to follow the models set by other states, including Pennsylvania and Hawaii, to protect

6

clean air and water. N.Y. Senate Bill S528, Sponsor Memo; s*ee Marte*, 2023 WL 2971394 at *3 (discussing the similar constitutional provisions of Pennsylvania and Hawaii as "self-executing," meaning they "provide[] a complete and enforceable rule that a court could implement without the aid of legislative enactment") (internal citations and quotations omitted); *see also* Nicholas A. Robinson, *The Dawn of Environmental Human Rights in New York*, N.Y.S. Bar Ass'n (May 26, 2023) (recognizing that the Green Amendment represents a "paradigm shift," in which it is "incumbent on state and local government agencies to exercise their due diligence to ensure that they respect each person's environmental human rights," if they want to avoid litigation).[2]

      To be clear, Plaintiffs do not assert that any diminution of environmental quality, however slight, implicates the Green Amendment. But the Court need not test the outer boundaries of the Amendment here because it is acknowledged that Congestion Pricing will increase pollution for the next 20 years in vulnerable environmental justice communities in our region, ones already suffering from various forms of pollution. And while Defendants point to promised mitigation, the plain fact is that the timing, much less the efficacy, of such efforts, even if they were to occur, is uncertain. What is certain is that, while the jurisprudential parameters of agency review under the Green Amendment may be in its infancy, no Green Amendment analysis was undertaken, as confirmed by Defendants' position that the Amendment has no substantive import. At the very least, if the Green Amendment is to mean anything, the individual constitutional rights of Plaintiffs to live free of significant and harmful pollution cannot simply be cast aside (or netted out) in favor of an incremental decrease in congestion in one particular segment of the City. Plaintiffs do not contend that the Green Amendment precludes any congestion pricing plan; Plaintiffs do maintain, however, that a plan that diverts pollution from a favored area to those already so burdened (and

---

[2] Available at: https://nysba.org/the-dawn-of-environmental-human-rights-in-new-york/?srsltid=AfmBOorEd1PK3o2dYda51zsWc3PfyRlhH68lQg35R53kaz7qiucHpqvw#_edn24.

less powerful) is violative of the State Constitutional provision. Nowhere is it preordained that a congestion pricing plan must environmentally (and financially) disadvantage significant swarths of the region.

B.      Other Preliminary Injunction Factors: TANY's arguments on reply regarding the sufficiency of constitutional injury in an application for preliminary injunction where constitutional claims are asserted apply equally to Plaintiffs' state constitutional claims and are adopted with regard to the Green Amendment claim, again because Plaintiffs have asserted non-economic harms. On the balance of the injunction, Defendants harp on the public interest in avoiding the loss of public funds that have already been spent on Congestion Pricing's design, implementation and operation. But that is a problem entirely of Defendants' own making. *See Sierra Club v. U.S. Army Corp. of Engineers*, 732 F.2d 253 (2d Cir. 1984) (modifying injunction in Westway and noting the decision by New York to "spend its own funds on preliminary design and engineering work" might be wasted if "Westway is not ultimately built" but that "the wisdom of that gamble is for the State to assess."). No one forced Defendants to implement Congestion Pricing or expend public resources before it had been approved, much less before there was an actual tolling structure finalized. Further, the assertion that TBTA and MTA are unable to handle the loss of revenue associated with Congestion Pricing is belied by the Governor's public statements about finding alternate sources of funding and the very circumstances of the program, where the previously set June 30th start date has already been postponed six months and public transit has continued to operate. Defendants may have to "pause" Congestion Pricing again should the Court grant injunctive relief, but the public interest in avoiding an unconstitutional toll and enduring environmental harm far outweighs any near-term hit to the MTA's budget.

## **CONCLUSION**

For the forgoing reasons, and for the reasons set forth in Plaintiffs' opposition to Defendants' motion to dismiss, the Court should grant a preliminary injunction enjoining the implementation of Congestion Pricing.

| | |
|---|---|
| Dated: New York, New York<br>December 6, 2024 | **STEPTOE LLP**<br><br>By:   /s/ Alan M. Klinger<br>         Alan M. Klinger<br>         Dina Kolker<br>         David Kahne<br>         1114 Avenue of the Americas<br>         New York, New York 10036<br>         (212) 506-3900<br>         aklinger@steptoe.com<br><br>*Co-Counsel for the Mulgrew and Chan Plaintiffs* |
| Of Counsel:<br><br>Carly Rolph<br>Alexander Langer | -and-<br><br>BETH A. NORTON, Esq.<br>United Federation of Teachers<br>52 Broadway<br>New York, NY 10004<br>(212) 701-9420<br><br>*Co-Counsel for the United Federation of Teachers and Individual Plaintiffs*<br><br>-and-<br><br>THE OFFICE OF LOUIS GELORMINO, Esq. & FONTE & GELORMINO LEGAL GROUP<br>2550 Victory Blvd.<br>Suite 304<br>Staten Island, NY 10314<br>(917) 968-1619<br>(718) 720-4949<br><br>*Co-Counsel for Vito J. Fossella* |

9