

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

December 16, 2024

**BY CM/ECF**

The Honorable Lewis J. Liman
United States District Court
500 Pearl St.
New York, N.Y. 10007

      Re:    *Chan v. U.S. Dep't of Transp.*, No. 23 Civ. 10365 (S.D.N.Y.) ("*Chan*"); *Mulgrew v. U.S. Dep't of Transp.*, No. 24 Civ. 1644 (S.D.N.Y.) ("*Mulgrew*"); *New Yorkers Against Congestion Pricing Tax v. U.S. Dep't of Transp.*, No. 24 Civ. 367 (S.D.N.Y.) ("*New Yorkers*"); *Trucking Ass'n of N.Y. v. Metro. Transp. Auth.*, No. 24 Civ. 4111 (S.D.N.Y.) ("*TANY*")

Dear Judge Liman:

      We write on behalf of Defendants the Metropolitan Transportation Authority ("MTA") and the Triborough Bridge and Tunnel Authority ("TBTA") pursuant to the Court's December 10, 2024 Order (*TANY*, ECF 93) directing the MTA, the TBTA, and Plaintiff Trucking Association of New York ("TANY") to submit letter briefs addressing the First Circuit's recent decision in *American Trucking Associations, Inc. v. Rhode Island Turnpike & Bridge Authority*, __ F.4th __, 2024 WL 5001908 (1st Cir. Dec. 6, 2024) ("Op.").[1]

      As relevant here, the First Circuit's decision in *American Trucking* reversed the District Court for the District of Rhode Island's holding that a state tolling program ("RhodeWorks") – which only applied to tractor trailers and larger trucks, not smaller vehicles such as passenger cars and single-unit trucks – was unconstitutional under the "fair approximation" prong of the *Evansville*/*Northwest Airlines* test. *See* Op. at *1-2 (reversing *Am. Trucking Associations, Inc. v. Alviti*, 630 F. Supp. 3d 357 (D.R.I. 2022) ("*Alviti*")).[2] Notwithstanding the questionable relevance

---

[1] Citations to "*Chan* Opp." and "*Chan* Reply" are to the opposition and reply memoranda of law filed in *Chan* at ECF 130 and ECF 142, respectively; and to "*TANY* Opp." and "*TANY* Reply" are to the opposition and reply memoranda of law filed in *TANY* at ECF 76 and ECF 89, respectively. Citations to "MTA MTD" and "MTA Opp." are to the memoranda of law filed in *Chan* at ECF 118 and ECF 137, respectively.

[2] The *Chan* and *Mulgrew* Plaintiffs likewise relied on *Alviti* for their fair-approximation arguments. *See Chan* Opp. at 13. The First Circuit separately affirmed the district court's conclusion in *Alviti* that a different aspect of the Rhode Island program, which regulated the total amount that trucks could be charged on certain routes or within a certain time period, had the effect of unconstitutionally favoring the local trucking industry over out-of-state trucks. Op. at

of the district court's decision in *Alviti* here, because the *Chan*, *Mulgrew*, and *TANY* Plaintiffs relied on it so extensively for their right to travel and dormant Commerce Clause claims, the First Circuit's reversal of *Alviti* undermines their arguments before this Court.

1. Fair Approximation

The "fair approximation" prong of the *Evansville*/*Northwest Airlines* test asks whether the fee charged reflects "rational distinctions among different classes of motorists." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 98 (2d Cir. 2009). As the First Circuit explained, this standard "is a lenient one" and courts will "strike down a public facility fee as not fairly approximated only if the legislature allocated it in a 'wholly unreasonable' manner." Op. at *11 (quoting *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 718 (1972), and citing *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 259 (2d Cir. 2013)).

In arguing that the distinctions drawn by the Central Business District ("CBD") Tolling Program (the "Program") are wholly unreasonable, TANY relied almost exclusively on the district court's decision in *Alviti*. *See* TANY Opp. at 17-18. That reliance was always misplaced, given that RhodeWorks exempted approximately 97% of users, Op. at *2, while the Program, by contrast, will apply to nearly all vehicles entering the CBD, including trucks, passenger vehicles, taxis, for-hire vehicles, motorcycles, and noncommuter buses, MTA Op. at 13.[3] But TANY's arguments now fall particularly flat in light of the First Circuit's holding that the RhodeWorks tolling structure actually satisfies the "fair approximation" test. Op. at *11-16.

In *American Trucking*, the First Circuit emphasized that the "wholly unreasonable" standard does not require "precision," and that it permits states to use "imperfect" and "rough approximation[s]" when allocating toll charges. Op. at 11. Applying this standard, the Court held that Rhode Island's decision to only toll large trucks "would seem to pass the fair-approximation test quite easily." *Id.* at *12. The Court explained that it was not "wholly unreasonable to presume that bigger trucks will cause more damage" to Rhode Island's infrastructure, and that the Legislature's conclusion in this regard was "consistent with common sense." *Id.* at *14. Consequently, the First Circuit reversed, explaining that the rational-basis *Evansville*/*Northwest Airlines* test did not give courts a license to "substitute our own judgment for that of the Rhode Island legislature." *Id.*

The same analysis controls here, as it is clearly not "wholly unreasonable" to conclude that trucks and noncommuter buses will contribute more to congestion than smaller vehicles, and therefore should pay a greater toll. *See* MTA MTD at 15; MTA Opp. at 13. If the Constitution

---

*8-11. Plaintiffs did not cite or rely on this latter aspect of the *Alviti* decision in their briefs and have not argued that its reasoning applies.

[3] TANY also argued that *Alviti* was analogous because "more than half of all vehicles entering the [CBD]"—referring to taxis and for-hire vehicles—"are fully exempt" under the Program. *TANY* Opp. at 18. But as TANY now appears to concede, it is not true that these classes of vehicles are exempt from the Program's tolls. *See* MTA Opp. at 13; *TANY* Reply at 8; *see also TANY*, ECF 94 at 3.

2

permits a state to *only* toll large trucks, while exempting smaller vehicles entirely, it logically follows that charging trucks a greater toll than smaller vehicles (as the Program does here) is presumptively permissible.

TANY cannot demonstrate otherwise. While TANY concedes that the First Circuit reversed *Alviti* in relevant part, *TANY*, ECF 94 at 2, TANY nonetheless argues that it is wholly unreasonable to conclude that trucks "contribute most to traffic congestion" because trucks make "up a mere 4% of all traffic in the zone," *id.* at 2-3. But that doesn't make sense. Trucks contribute more to congestion on a pro-rata basis even if they make up a smaller percentage of vehicle traffic in the CBD overall. *See* MTA Opp. at 14 n.14. The First Circuit's decision in *American Trucking* means that TANY's arguments have no basis under what is essentially a form of rational-basis review.

2. Excessiveness

The First Circuit's decision serves to underscore that Plaintiffs' claims under the excessiveness prong of the *Evansville*/*Northwest Airlines* test are foreclosed as well because the Program and the Program's toll rate schedule are authorized by the Federal Highway Administration pursuant to the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"). *See* MTA Opp. at 14-15; *see also TANY*, ECF 81-2 (Value Pricing Pilot Program Agreement). The *Chan* and *Mulgrew* Plaintiffs mistakenly relied on *Alviti* in arguing that the Program is excessive, *Chan* Opp. at 14-15, despite the fact that the district court in *Alviti* and the First Circuit in *American Trucking* both agree that federal authorization of Rhode Island's tolling program under the ISTEA "takes excessiveness out of play." *Alviti*, 630 F. Supp. 3d at 379. As the First Circuit explained, "no toll for an ISTEA-authorized bridge can be stricken merely because it exceeds the benefits conferred on the users." Op. at *3 (citing *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 293 (3d Cir. 2019)).

Intervenor Attorney General Letitia James and Defendant Stephanie Winkelhake join this letter.

                                              Respectfully submitted,

                                              Roberta A. Kaplan

cc:    Counsel of Record (via ECF)